UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JORGE GARRIDO,<br><br>　　　　　Petitioner,<br><br>　　v.<br><br>WARDEN, FCI-MENDOTA,<br><br>　　　　　Respondent. | No.  1:22-cv-00991-SKO (HC)<br><br>**ORDER DIRECTING CLERK OF COURT TO ASSIGN DISTRICT JUDGE**<br><br>**FINDINGS AND RECOMMENDATION TO GRANT RESPONDENT'S MOTION TO DISMISS [Doc. 12]**<br><br>**[TWENTY-ONE DAY OBJECTION DEADLINE]** |

Petitioner is a federal prisoner proceeding *pro se* and *in forma pauperis* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.

On August 3, 2022, Petitioner filed the instant habeas petition. (Doc. 1.) On November 4, 2022, Respondent filed a motion to dismiss the petition. (Doc. 11.) On that same date, Respondent filed an amended motion to dismiss. (Doc. 12.) Respondent contends the petition should be dismissed for lack of standing and ripeness, failure to exhaust, and lack of jurisdiction. (Doc. 12.) On January 30, 2023, Petitioner filed an opposition to the motion. (Doc. 17.) He also filed a request for judicial notice on January 30, 2023, requesting that the Court take judicial notice of the Bureau of Prison's Program Statement 5410.01 which sets forth the Bureau's procedures for implementation of 18 U.S.C. § 3632(d)(4) and Section 101 of the First Step Act of 2018 ("FSA"). (Doc. 18.) Having reviewed the pleadings, and in light of recent changes in BOP

1

procedures, the Court will recommend that Respondent's motion to dismiss the petition for standing, ripeness, failure to exhaust, and failure to state a claim be GRANTED, and the petition be DISMISSED.

## DISCUSSION

### I.     Motion to Dismiss

The Ninth Circuit has allowed respondents to file a motion to dismiss in lieu of an answer. See, e.g., O'Bremski v. Maass, 915 F.2d 418, 420 (9th Cir. 1990) (using Rule 4 to evaluate motion to dismiss petition for failure to exhaust state remedies); White v. Lewis, 874 F.2d 599, 602-03 (9th Cir. 1989) (using Rule 4 as procedural grounds to review motion to dismiss for state procedural default); Hillery v. Pulley, 533 F.Supp. 1189, 1194 & n.12 (E.D. Cal. 1982) (same). The Court will review the motion under Rule 4 standards. See Hillery, 533 F. Supp. at 1194 & n. 12.

### II.    Background

Petitioner is currently serving an aggregate 116-month term of imprisonment for two separate and distinct offenses. (Doc. 12-1 at 2.[1]) On September 27, 2017, the United States District Court for the Southern District of Florida imposed a 46-month sentence for violation of 18 U.S.C. § 1349, Conspiracy to Commit Bank and Wire Fraud Affecting a Financial Institution, in United States v. Garrido, Case No. 1:15-cr-20973. (Doc. 12-1 at 2.) On August 7, 2019, the United States District Court for the Southern District of Florida imposed a consecutive 70-month sentence for violation of 18 U.S.C. § 1349, Conspiracy to Commit Wire Fraud, in United States v. Garrido, Case No. 1:18-cr-20784. (Doc. 12-1 at 2.)

Petitioner is currently incarcerated at Federal Correctional Institution in Mendota, California. (Doc. 12-1 at 3.) According to Respondent's exhibits, Petitioner is subject to removal proceedings; however, the Department of Homeland Security ("DHS") has not made a determination whether Petitioner is subject to a final order of removal. (Doc. 12-1 at 7-8.) At the outset of this case, the Bureau determined that Petitioner is ineligible for First Step Act ("FSA")

---

[1] Citations are to ECF pagination unless noted.

credits because he is a deportable alien.  (Doc. 12-1 at 3.)  He currently has a projected release date of June 12, 2025, via Good Conduct Time ("GCT"). (Doc. 12-1 at 3.)

According to the BOP's records of its Administrative Remedy Program, Petitioner has never submitted an Administrative Remedy Request.  (Doc. 12-1 at 3.)

### III.     The First Step Act

The First Step Act was enacted on December 21, 2018, and implemented a number of prison and sentencing reforms, including computation of good time credits, reducing and restricting mandatory minimum sentences, safety valve eligibility, retroactive application of the Fair Sentencing Act, and the availability of early release. First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (2018).

With respect to earned time credit, the Ninth Circuit has described the First Step Act's amendments as follows:

> [P]aragraph 102(b)(1) amends [18 U.S.C.] § 3624 by adding subsection (g), which is relevant to the Act's creation of an earned time credit system. [132 Stat.] at 5210-13. The Act requires that, within 210 days of its enactment, the Attorney General establish a "risk and needs assessment system" to, broadly speaking, review each prisoner's recidivism risk level, award earned time credit as an incentive for participation in recidivism reduction programming, and "determine when a prisoner is ready to transfer into prerelease custody or supervised release in accordance with section 3624." § 101(a), 132 Stat. at 5196– 97. Section 3624(g) details the criteria for when a prisoner becomes eligible, considering earned time credit, for transfer to prerelease custody or supervised release. § 102(b), 132 Stat. at 5210–13.

Bottinelli v. Salazar, 929 F.3d 1196, 1197–98 (9th Cir. 2019).

In accordance with 18 U.S.C. § 3632, the United States Department of Justice ("DOJ") published the risk and needs assessment system on July 19, 2019. Press Release, U.S. Dep't of Just., Department of Justice Announces the Release of 3,100 Inmates Under First Step Act, Publishes Risk And Needs Assessment System (July 19, 2019), https://www.justice.gov/opa/pr/department-justice-announces-release-3100-inmates-under-first-step-act-publishes-risk-and (*last visited* Mar. 9, 2023).

With respect to implementation of the risk and needs assessment system, 18 U.S.C. § 3621(h) provides:

> (1) In general.--Not later than 180 days after the Attorney General completes and

> releases the risk and needs assessment system (referred to in this subsection as the "System") developed under subchapter D, the Director of the Bureau of Prisons shall, in accordance with that subchapter--
>
>> (A) implement and complete the initial intake risk and needs assessment for each prisoner (including for each prisoner who was a prisoner prior to the effective date of this subsection), regardless of the prisoner's length of imposed term of imprisonment, and begin to assign prisoners to appropriate evidence-based recidivism reduction programs based on that determination;
>>
>> (B) begin to expand the effective evidence-based recidivism reduction programs and productive activities it offers and add any new evidence-based recidivism reduction programs and productive activities necessary to effectively implement the System; and
>>
>> (C) begin to implement the other risk and needs assessment tools necessary to effectively implement the System over time, while prisoners are participating in and completing the effective evidence-based recidivism reduction programs and productive activities.
>
> (2) Phase-in.--In order to carry out paragraph (1), so that every prisoner has the opportunity to participate in and complete the type and amount of evidence-based recidivism reduction programs or productive activities they need, and be reassessed for recidivism risk as necessary to effectively implement the System, the Bureau of Prisons shall--
>
>> (A) provide such evidence-based recidivism reduction programs and productive activities for all prisoners before the date that is 2 years after the date on which the Bureau of Prisons completes a risk and needs assessment for each prisoner under paragraph (1)(A); and
>>
>> (B) develop and validate the risk and needs assessment tool to be used in the reassessments of risk of recidivism, while prisoners are participating in and completing evidence-based recidivism reduction programs and productive activities.

18 U.S.C. § 3621(h)(1)–(2).

Pursuant to 18 U.S.C. § 3621(h)(1), all inmates in the BOP system were to receive an initial assessment using the risk and needs assessment system known as the Prisoner Assessment Tool Targeting Estimated Risk and Need ("PATTERN") by January 15, 2020.  Press Release, U.S. Dep't of Just., Department of Justice Announces Enhancements to the Risk Assessment System and Updates on First Step Act Implementation (Jan. 15, 2020), https://www.justice.gov/opa/pr/department-justice-announces-enhancements-risk-assessment-system-and-updates-first-step-act (*last visited* Mar. 9, 2023).  On January 13, 2022, the Department of Justice announced that the BOP had finalized the FSA time credit rule, and on January 19, 2022, the final rule was published. FSA Time Credits, 87 Fed. Reg. 2705-01, 2022

4

WL 159155 (Jan. 19, 2022) (codified at 28 C.F.R. §§ 523, 541.)

Prisoners "who successfully complete[ ] evidence-based recidivism reduction programming or productive activities" "shall earn 10 days of time credits for every 30 days of successful participation." 18 U.S.C. § 3632(d)(4)(A). A prisoner determined "to be at a minimum or low risk for recidivating, who, over 2 consecutive assessments, has not increased their risk of recidivism, shall earn an additional 5 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities." 18 U.S.C. § 3632(d)(4)(A)(ii).

Inmates may begin earning First Step Act time credits ("FTCs") after the inmate's term of imprisonment commences, but an inmate cannot earn FTCs for programming or activities in which he or she participated prior to December 21, 2018. 28 C.F.R. § 523.42.  Further, an inmate can earn retroactive application of time credits for programming or activities in which he or she participated from December 21, 2018, to January 13, 2022.  Id.

"Section 3624(g) details the criteria for when a prisoner becomes eligible, considering earned time credit, for transfer to prerelease custody or supervised release," Bottinelli, 929 F.3d at 1198, and provides that the "Attorney General, in consultation with the Assistant Director for the Office of Probation and Pretrial Services, shall issue guidelines for use by the Bureau of Prisons in determining the appropriate type of prerelease custody or supervised release and level of supervision for a prisoner placed on prerelease custody pursuant to this subsection," 18 U.S.C. § 3624(g)(6)(A).

**IV.     Standing and Ripeness**

Article III of the United States Constitution limits the federal courts to deciding "cases" and "controversies."  Two components of the Article III case-or-controversy requirement are the "closely related" concepts of standing and ripeness. Bova v. City of Medford, 564 F.3d 1093, 1095-96 (9th Cir. 2009) (citing Colwell v. Dep't of Health & Human Servs., 558 F.3d 1112, 1121, 1123 (9th Cir. 2009)). The Ninth Circuit has described standing, ripeness, and their overlap as follows:

> To have standing, a plaintiff must have suffered an injury in fact that is "concrete and particularized;" that can be fairly traced to the defendant's action; and that can be redressed by a favorable decision of the court. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). "While standing is primarily concerned with who is a proper party to litigate a particular matter, ripeness addresses when litigation may occur." Lee v. Oregon, 107 F.3d 1382, 1387 (9th Cir. 1997). "[I]n many cases, ripeness coincides squarely with standing's injury in fact prong." Thomas v. Anchorage Equal Rights Comm'n, 220 F.3d 1134, 1138 (9th Cir. 2000) (en banc). The ripeness inquiry in some cases may therefore "be characterized as standing on a timeline." Id.
>
> For example, "[a] claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." Texas v. United States, 523 U.S. 296, 300, 118 S.Ct. 1257, 140 L.Ed.2d 406 (1998) (quoting Thomas v. Union Carbide Agric. Prods. Co., 473 U.S. 568, 580-81, 105 S.Ct. 3325, 87 L.Ed.2d 409 (1985) (internal quotation marks omitted)). That is so because, if the contingent events do not occur, the plaintiff likely will not have suffered an injury that is concrete and particularized enough to establish the first element of standing. See Lujan, 504 U.S. at 560, 112 S.Ct. 2130. In this way, ripeness and standing are intertwined.

Bova, 564 F.3d at 1096. "Ripeness is a justiciability doctrine designed 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.'" Nat'l Park Hosp. Ass'n v. Dep't of Interior, 538 U.S. 803, 807-08 (2003) (quoting Abbott Labs. v. Gardner, 387 U.S. 136, 148–49 (1967)).

Respondent contends that Petitioner lacks standing because the BOP has taken no action or theoretical inaction which would affect Petitioner's sentence or sentence end-phase programming options. Respondent contends that there is no "injury fairly traceable to the defendant's allegedly unlawful conduct" that is "likely to be redressed by the requested relief." Allen v. Wright, 468 U.S. 737, 751 (1984).

In his motion, Respondent states:

> As a matter of law, Petitioner is not eligible to apply FTCs; He does not qualify under the conditions of 18 U.S.C. § 3624(g)(1)(A). In this regard, § 3624(g)(1)(A) sets forth qualification for eligible prisoners as those who have earned time credits under the risk and needs assessment system in an amount that is equal to the remainder of the prisoner's imposed term of imprisonment. Petitioner has a projected release date of June 12, 2025, via Good Conduct Time release. That date is two years and seven months into the future and leaves Petitioner with approximately 950 days remaining to serve. Petitioner claims he is entitled to 365 days of FTCs, which by way of the statute is not equal to the remainder of

> Petitioners term of imprisonment and therefore, does not permit him to be eligible to apply such credits at this time. As such, in accordance with the statutory limitations outlined in the First Step Act itself, this claim is not ripe for review.

(Doc. 12 at 3, fn. 3.)

Respondent's contention is persuasive in light of recent changes to BOP policy and procedure. Petitioner alleges the BOP has determined he is ineligible to earn FTCs solely because he has a detainer lodged against him. Prior to November 18, 2022, the BOP did take the position that inmates with detainers were ineligible for FSA credits. However, on November 18, 2022, the BOP issued Program Statement 5410.01 modifying its procedures to allow inmates with detainers to earn FTCs; the inmates still could not have those FTCs applied until the detainers were resolved. U.S. Dep't of Justice, Federal Bureau of Prisons, Program Statement No. 5410.01, First Step Act of 2018 - Time Credits: Procedures for Implementation of 18 U.S.C. 3632(d)(4), at 17 (Nov. 18, 2022), https://www.bop.gov/policy/progstat/5410_01.pdf (*last visited* Mar. 9, 2023). Then recently, on February 6, 2023, the BOP issued a change notice to the program statement in which the BOP deleted the requirement that inmates have no detainers in order to have FTCs applied to their sentence. U.S. Dep't of Justice, Federal Bureau of Prisons, Change Notice to Program Statement No. 5410.01, First Step Act of 2018 - Time Credits: Procedures for Implementation of 18 U.S.C. 3632(d)(4) (Feb. 6, 2023), https://www.bop.gov/policy/progstat/5410.01_cn.pdf (*last visited* Mar. 9, 2023). Thus, Petitioner is no longer barred from earning FTCs and having them applied to his sentence due to the detainer. The basis for Petitioner's complaint is not at issue, and Respondent is correct that there is no case or controversy. Petitioner lacks standing and the petition should be dismissed.

To the extent that Petitioner takes issue with any future application of FTCs to his sentence, the claim is not ripe for review. Petitioner has a projected release date of June 12, 2025, via Good Conduct Time release. That date is two years and three months into the future. Petitioner claims he is entitled to 365 days of FTCs, which is not equal to the remainder of his prison term. Thus, he is not eligible to apply FTCs at this time, and the claim is unripe.

**V.     Exhaustion**

Before filing a petition for writ of habeas corpus, a federal prisoner challenging any

1  circumstance of imprisonment must first exhaust all administrative remedies.  Martinez v.
2  Roberts, 804 F.2d 570, 571 (9th Cir. 1986); Chua Han Mow v. United States, 730 F.2d 1308,
3  1313 (9th Cir. 1984); Ruviwat v. Smith, 701 F.2d 844, 845 (9th Cir. 1983).  The requirement that
4  federal prisoners exhaust administrative remedies before filing a habeas corpus petition was
5  judicially created; it is not a statutory requirement.  Brown v. Rison, 895 F.2d 533, 535 (9th Cir.
6  1990).  Thus, "because exhaustion is not required by statute, it is not jurisdictional." Id.  If
7  Petitioner has not properly exhausted his claims, the district court, in its discretion, may either
8  "excuse the faulty exhaustion and reach the merits or require the petitioner to exhaust his
9  administrative remedies before proceeding in court."

10  The first step in seeking administrative remedies is a request for informal resolution. 28
11  C.F.R. § 542.13.  When informal resolution procedures fail to achieve sufficient results, the BOP
12  makes available to inmates a formal three-level administrative remedy process: (1) a Request for
13  Administrative Remedy ("BP-9") filed at the institution where the inmate is incarcerated; (2) a
14  Regional Administrative Remedy Appeal ("BP-10") filed at the Regional Office for the
15  geographic region in which the inmate's institution is located; and (3) a Central Office
16  Administrative Remedy Appeal ("BP-11") filed with the Office of General Counsel.  28 C.F.R. §
17  542.10 et seq.

18  According to Respondent, Petitioner has never requested relief through the BOP's
19  administrative remedy process.  Thus, the claims are unexhausted.  The exhaustion requirement
20  "is not lightly to be disregarded." Murillo v. Mathews, 588 F.2d 759, 762, n.8 (9th Cir. 1978)
21  (citation omitted).  A "key consideration" in exercising such discretion is whether "relaxation of
22  the requirement would encourage the deliberate bypass of the administrative scheme[.]" Laing v.
23  Ashcroft, 370 F.3d 994, 1000 (9th Cir. 2004) (internal quotation marks omitted).  Petitioner
24  contends that exhaustion is futile since the BOP's position that he is statutorily barred from
25  earning FTCs is established policy.  As previously discussed, the BOP has since altered its
26  position such that he is not statutorily barred from earning FTCs.  Therefore, exhaustion in this
27  case would not be futile.  The exhaustion requirement should not be excused in this case.
28

### VI.     Failure to State a Claim for Relief

Respondent correctly notes that this Court lacks jurisdiction to review BOP discretionary, individualized, decisions concerning release to home confinement and application of time credits. As a matter of law, 34 U.S.C. § 60541(g) grants to the Attorney General the discretion to release certain prisoners to serve the latter part of their sentence on home confinement. As the statute makes clear, the "Attorney General" is granted the discretion and "may release" some eligible offenders. Id. Whether or not the BOP grants Petitioner credits under the FSA is entirely within its discretion. The "failure to receive relief that is purely discretionary in nature does not amount to a deprivation of a liberty interest." See Mejia Rodriguez v. Reno, 178 F.3d 1139, 1146 (11th Cir. 1999) (citing Conn. Bd. of Pardons v. Dumschat, 452 U.S. 458, 465 (1981)).

Petitioner contends that the BOP has determined him ineligible for early release under the FSA. He asserts that the BOP has misinterpreted the statute to bar him from earning FSA credits. As previously discussed, Program Statement 5410.01, issued on November 18, 2022, modified the BOP's previous position that inmates with detainers were ineligible for FSA credits to holding that inmates with detainers *could earn* FSA credits but not *spend* them unless the detainers were resolved. On February 6, 2023, the BOP further modified the program statement by deleting the requirement that inmates have no detainers prior to having FTCs applied to their sentence. Since Petitioner is not barred from earning FTCs and having them applied to his sentence, the petition does not present a claim for relief.

**ORDER**

Based on the foregoing, IT IS HEREBY ORDERED that the Clerk of Court is directed to assign a district judge to the case.

**RECOMMENDATION**

Accordingly, the Court RECOMMENDS that Respondent's motion to dismiss be GRANTED and the petition for writ of habeas corpus be DISMISSED.

This Findings and Recommendation is submitted to the United States District Court Judge assigned to this case, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.

Within twenty-one (21) days after being served with a copy, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: **March 20, 2023**                     /s/ *Sheila K. Oberto*
                                              UNITED STATES MAGISTRATE JUDGE